# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TESORO REFINING & MARKETING COMPANY LLC and WESTERN REFINING RETAIL LLC, | § § § § | |
| *Plaintiffs,* | § § | Civil Action No.  SA-18-CV-820-XR |
| v. | § § | |
| C.A.R. ENTERPRISES, INC., TMSO, INC., and NMSO, INC. | § § § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) (docket no. 22), Defendants' Motion to Strike Amended Complaint (docket no. 23), Defendants' Motion to Dismiss or Transfer for Improper Venue (docket no. 24), and the various responses and replies thereto.

Defendants' Motion to Strike Amended Complaint (docket no. 23) is denied. This Order addresses areas of concern for the remaining motions, to be discussed at the upcoming status conference.

### Background

Plaintiffs Tesoro Refining & Marketing Company, LLC and Western Refining Retail, LLC sue for breach and/or anticipatory breach of contract and declaratory relief against Defendants C.A.R. Enterprises, Inc., TMSO, Inc., and NMSO, Inc. According to the First Amended Complaint, the suit involves a dispute regarding Tesoro's right to terminate locations from Multi-Site Contractor Operated Retail Outlet Agreements ("MSO

Agreements") between Tesoro and Defendants "at any time" and Defendants' breach or anticipatory breach of various provisions in the MSO Agreements related to such terminations. Docket no. 10 ¶ 1. Tesoro and Western are both subsidiaries of Andeavor, whose retail marketing system includes approximately 3,300 retail motor fuel stations. Tesoro owns and Western operates some retail motor fuel facilities themselves, but Tesoro enters into MSO Agreements with independent contractors to operate some locations. *Id.* ¶ 19.

Plaintiffs allege that Tesoro entered into various MSO Agreements with each of the three Defendants beginning in 2017, wherein Tesoro engaged Defendants as independent contractors to provide services at motor fuel facilities at agreed-upon Locations (as specified in the MSO Agreements) and granted Defendants a limited license to operate for their own account their business at each and every Location, subject to the terms and conditions of the agreements. Tesoro alleges that one of those terms and conditions is Tesoro's right to terminate any individual Location without cause or for any reason or no reason at all, upon ninety days written notice, after which Defendants owe obligations to Tesoro to cooperate with the transfer of the Location to Tesoro or its designee. Tesoro alleges that it has exercised its right to terminate particular Locations included in the contracts with each Defendant, and has designated Western as the transferee, but "Defendants have flouted their contractual obligations to cooperate in the transition process." Docket no. 10 ¶ 4.

Plaintiffs allege that Defendants' disregard of their contractual obligations is escalating over time, and Defendants have indicated that they do not intend to cooperate with Tesoro in transitioning properties to Western in the future. *Id.* ¶ 5. Instead, Plaintiffs allege, Defendants demanded $130 million, premised on the assertion that "Tesoro employees made oral

representations precluding Tesoro's termination of particular Locations." *Id.* ¶ 6.[1] Plaintiffs allege that "Defendants' actual, anticipatory, and threatened breach of their contractual obligations as well as their attempt to extract a ransom from Tesoro for the exercise of its unambiguous and bargained-for right to terminate Locations 'without cause or for any reason or no reason at all' leaves Tesoro with no choice but to initiate this lawsuit to resolve the parties' disputes." *Id.* ¶ 7.

### Jurisdiction

Plaintiffs bring this action based on diversity jurisdiction, noting that they are citizens of Texas and Arizona and, on information and belief, Defendants are citizens of California. Defendants do not challenge any of Plaintiffs' citizenship allegations. However, Defendants do challenge whether the amount in controversy requirement is satisfied.

When jurisdiction depends on diversity, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Plaintiffs expressly allege in the "Jurisdiction" section of their Complaint that "the value of the right to be protected and the extent of the injury to be prevented far exceeds $75,000." Docket no. 10 ¶ 16. While ordinarily some deference is given to good-faith allegations concerning the amount in controversy, Plaintiffs' bare allegation, which is conclusory and does not differentiate between the harm suffered by either Plaintiff or among the claims against the three different Defendants (nor does it provide a basis for aggregation), "does not invest a federal court with jurisdiction."

---

[1] Plaintiffs state that they reference these communications for the limited purpose of establishing the existence of a case or controversy (a legitimate threat of litigation) between the parties. Docket no. 10 at 18 n.8. Defendants have moved to strike certain allegations in Plaintiffs' First Amended Complaint as scandalous and as violating Rule 408. Rule 408 generally provides that "conduct or statements made in compromise negotiations regarding" a disputed claim are "not admissible . . . when offered to prove liability for . . . or amount of the claim" that was in dispute at the time the statements were made. The motion to strike is denied at this time, but the Court will consider the allegations to determine the existence of a controversy and the amount in controversy only. *See Nat'l Presort, Inc. v. Bowe Bell + Howell Co.*, 663 F. Supp. 2d 505 (N.D. Tex. 2009).

*Dow Agrosciences LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) (stating that plaintiff's complaint for declaratory relief stating that the value of each of the individual claims exceeded $75,000 was insufficient to establish jurisdiction), *rev'd on other grounds sub nom* 544 U.S. 431 (2005). The Court must therefore determine whether the face of the Complaint otherwise establishes the amount in controversy and, if not, whether summary-judgment type evidence does. *Id.*; *see also Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997) (a case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts). [2]

This case involves two claims (breach of contract and declaratory judgment) arising out of three separate contracts and brought by two Plaintiffs against three Defendants. Determining whether the amount in controversy, and thus, diversity jurisdiction, is satisfied can be complex in such multi-party actions. It is not appropriate to lump all parties and claims together into a single amount in controversy, as Plaintiffs have done in this case, unless the Complaint also establishes a basis for aggregation of all claims and parties.

The facts concerning Plaintiffs' claims against the three Defendants differ. Tesoro contracted with C.A.R. and NMSO in 2017, and on August 8, 2017 it terminated two C.A.R.

---

[2] In actions filed originally in federal court, the sum claimed by the plaintiff controls the amount in controversy if the claim is apparently made in good faith, and dismissal is justified only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). However, "this 'legal certainty' test has limited utility – in fact is inapplicable – when the plaintiff has alleged an indeterminate amount of damages," and bare allegations of the amount in controversy have been held insufficient to invest a federal court with jurisdiction. *Id.* If the complaint does not allege a specific amount of damages to trigger the legal certainty test, then "the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* The district court first examines the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount; if not, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy." *Id.* The jurisdictional facts are to be judged as of the time the complaint is filed. *Id.*

Locations and thirteen NMSO Locations in the "Group 1 Terminations." The Complaint alleges that C.A.R. and NMSO both timely complied with their obligations under the contracts, and there is no claim for breach of contract associated with these terminations. In December 2017, Tesoro terminated Locations subject to contracts with a non-party, JV S&T, Inc., in the "Group 2 Terminations."

The primary subject of this lawsuit is the "Group 3 Terminations," which were noticed on April 5, 2018, and possible, unspecified future terminations. On April 5, Tesoro notified C.A.R. that it intended to terminate 22 of its 27 Locations, with changeover dates from August through November 2018. Compl. ¶ 34. Tesoro notified NMSO that it intended to terminate 10 of its 64 Locations, with changeover dates in July 2018. Compl. ¶ 35. And Tesoro notified TMSO that it intended to terminate 1 of its 32 Locations, with a September 7, 2018 changeover date. Compl. ¶ 36. Plaintiffs allege that Defendants asserted at an August 1, 2018 meeting that they would not cooperate with the Group 3 transitions or future transitions, and that "Defendants" asserted on August 7 that they suffered $65 million in damages from the Group 1, 2, and 3 terminations (thus including terminations for non-party JV S&T) and would lose an additional $65 million if Tesoro terminates additional Locations.[3] Compl. ¶ 49.

However, the Complaint also alleges that "Defendants" delayed providing transfer of business permits "until one day before the changeover date for some of the Locations subject to the Group 3 Termination Notices," in breach of Section 8(c)(2) of the MSO Agreements,

---

[3] As will be noted, C.A.R., TMSO, NMSO, JV S&T, and another entity, AK, Inc., filed suit in California on August 10, 2018, the day after this suit was filed, against "Andeavor formally known as Tesoro Marketing & Refining Co., Tesoro Northstore Company, and Does 1-20. That complaint alleges that Tesoro Northstore entered into an MSO Agreement with AK, Inc. (governing locations in Alaska). It alleges that all Plaintiffs have had 63 sites taken away and that all Plaintiffs have been damaged in an amount of approximately $130 million. That case is currently pending in the Central District of California as Case No. 2:18-cv-07989-GW-JPR).

and "did not send a response to the operational transition spreadsheet until five days before the scheduled changeover date for some of the Locations subject to the Group 3 Termination Notices." Compl. ¶¶ 39, 41. It is these delays that form the basis of Plaintiffs' breach-of-contract claim for past breaches of the 2018 MSO Agreements. Compl. ¶ 53-55. The anticipatory breach claim asserts that Defendants "informed Tesoro that Defendants do not intend to cooperate with Tesoro to transfer the Locations subject to the Group 3 Termination Notices and/or any future termination notices." Compl. ¶ 16. However, as to the Group 3 Notices, it is clear that Defendants have transferred at least some Locations, though allegedly in an untimely manner in breach of the contracts, or there would be no basis for the past breach claims. No information is provided concerning how many Group 3 Locations had been transferred or remained to be transferred at the time the Complaint was filed on August 9, 2018, which is the time the amount in controversy must be measured.[4]

The Supreme Court has made clear that, to exercise diversity jurisdiction, there must be, at a minimum, complete diversity of citizenship and at least one Plaintiff whose claims (singly or combined) against one Defendant satisfy the amount in controversy threshold. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim."). Two Plaintiffs may not aggregate their damages to reach the threshold unless they have a "common and undivided interest." *Rangel v. Leviton Mfg. Co.*, No. EP-12-CV-04-KC, 2012 WL 884909, at *4 (W.D. Tex. Mar. 14, 2012).

---

[4] The NMSO Locations were to change over in July 2018, while the C.A.R. changeover dates ranged from August through November, and the TMSO changeover date was September 7, and thus it may be that only the NMSO Locations are at issue for the past breach.

However, if the claims by one Plaintiff against one Defendant satisfy the threshold and establish original diversity jurisdiction over "a civil action," even if that action comprises fewer claims than were included in the complaint, then deficient claims by the other Plaintiff may fall within the Court's supplemental jurisdiction if the Plaintiff is joined under Rule 20 or Rule 23, but not under Rule 19 or Rule 24. *Exxon Mobile Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 559 (2005); 28 U.S.C. § 1367(a), (b). Deficient claims against other Defendants would not fall within the Court's supplemental jurisdiction if those Defendants are made parties under Rule 14, 19, 20, or 24. 28 U.S.C. § 1367(b). If the Court cannot exercise supplemental jurisdiction over some parties, then it will generally dismiss those parties.

Here, because Plaintiffs lumped all claims and parties together in their amount in controversy allegation, they have not established the amount in controversy with regard to any particular claim. Thus, they have not shown the existence of a single claim over which this Court has original diversity jurisdiction, nor have they addressed the issue of supplemental jurisdiction over any deficient claims.

It appears undisputed that this case involves three separate but largely identical contracts with three separate Defendants and that Western is not a signatory to any contract. Plaintiffs both bring a cause of action for breach of contract and/or anticipatory breach of contract[5] and a cause of action for declaratory judgment under 28 U.S.C. § 2201 against all three Defendants. The prayer for relief requests declaratory relief concerning Tesoro's right to terminate Locations and Defendants' contractual obligations with regard to such terminations, a declaration that "Defendants must comply with their contractual obligations under Section

---

[5] The Complaint does not assert any basis for Western, as a non-signatory, to bring suit for breach of contract, though Plaintiffs' briefing contends that Western, as Tesoro's designee, is an assignee.

8(c)(3) of the MSO Agreements to transfer the Locations subject to the Group 3 Termination Notices and/or any future termination notices," "money damages, to the extent available under the MSO Agreements and applicable law, the amount of which to be determined at trial," "[a]n order requiring Defendants' specific performance of their obligations under the MSO Agreements," "[a]n order granting preliminary and permanent injunctive relief," pre- and post-judgment interest, and "[s]uch other relief as the Court deems proper."[6]

Neither Plaintiff alleges a specific amount in controversy for the breach of contract claim as to any Defendant, though they seek money damages and specific performance. As to the claims for money damages, Plaintiffs allege that, "[a]s a direct result of Defendants' breaches and anticipatory breach of the MSO Agreements, Plaintiffs have suffered damages and will continue to suffer significant damage, including irreparable harm." *Id.* ¶ 58. However, even assuming that Western may sue under the contract, the alleged harms suffered by Tesoro and Western differ,[7] and Plaintiffs may not aggregate their claims for money damages to reach

---

[6] The Complaint does not include a request for attorney's fees. Attorney's fees are included in the jurisdictional amount if the applicable state law permits recovery of the fees in the particular suit. Under Texas law, a prevailing party is entitled to recover its attorney's fees in a breach of contract action. Tex. Civ. Prac. & Rem. Code § 38.001. However, it is unclear whether the contract in this case precludes such an award. Further, the parties should address whether attorney's fees may be included when they are not pled.

[7] Defendants contend that although Tesoro is a party to the contracts, it "has not and cannot allege that it has been damaged by the purported breach by Defendants" because the alleged breach is Defendants' failure to timely transfer the Locations to Western and their purported refusal to transfer Locations to Western in the future. Docket no. 22 at 2. Thus, they argue, "because Tesoro is not the entity to which the Locations have been or will be transferred, Tesoro has not been and cannot be damaged." *Id.* Plaintiffs allege that they "suffered significant irreparable harm as a result of Defendants' failure to timely transfer the Business Permits, including difficult to quantify loss of customers and revenue and harm to reputation and goodwill," specifically noting that "Western was unable to sell alcoholic beverages in at least five of its Locations for up to a week because it did not have the necessary licenses to do so." *Id.* ¶ 40. Plaintiffs allege that "Defendants' late response" in returning the operational transition spreadsheet for the Group 3 Locations "did not give Tesoro sufficient time to successfully transition some of the subject Locations before the relevant changeover dates," causing "Plaintiffs significant, difficult to quantify harm to its brand and reputation." *Id.* ¶ 41. The Court notes that, under Texas law, which Plaintiffs assert is the controlling law in this case, plaintiffs cannot generally recover damages for loss of business reputation in a breach of contract action. *Rubalcaba v. Pac./Atl. Crop Exchange, Inc.*, 952 S.W.2d 552, 559

8

the $75,000 threshold. In addition, it may be that the claims (and damages suffered) related to past breaches at the time the Complaint was filed relate only to a single Defendant, such as NMSO, whose changeover dates were to occur in July 2018.

More importantly, it appears that any claims for monetary damages are severely curtailed by the contracts themselves. In their claims for specific performance, Plaintiffs assert that because § 23(c) of the MSO Agreements excludes Defendants' liability "for any indirect, incidental, consequential or punitive damages, including loss of profit or goodwill for any matter arising out of or relating to this Agreement and its subject matter, whether such liability is asserted on the basis of contract, or otherwise, Tesoro does not have an adequate remedy at law if Defendants are not compelled to comply with their obligations under the MSO Agreements" such that "[o]nly a grant of injunctive relief and/or specific performance by this Court preventing further breaches by Defendants will provide Plaintiffs with complete and full relief." *Id.* ¶¶ 58-59. Thus, Plaintiffs' claims for monetary damages appear to be limited or excluded by the contracts[8] and have not been shown to exceed $75,000 as to either Plaintiff.

Plaintiffs also seek specific performance, the value of which is "measured by the value of the object of the litigation" or, in some circumstances, the value of the property in question. *Jury v. WFG Nat's Title Ins. Co.*, No. 3:17-CV-2108-G, 2018 WL 1912713, at *6 (N.D. Tex. Apr. 23, 2018) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977) and *Waller v. Professional Ins. Corp.*, 296 F.2d 545 (5th Cir. 1961)). But the Complaint fails to monetize the object of the litigation or provide information concerning its

---

(Tex. App.–El Paso 1997, no writ); *Nelson v. Data Terminal Sys.*, 762 S.W.2d 744, 748 (Tex. App.–San Antonio 1988, writ denied).

[8] The Court notes that the contracts themselves have not been provided to the Court.

value to either Plaintiff.[9] The request for specific performance appears to apply only to some Group 3 Locations and unspecified possible future Locations. There is no information in the Complaint from which to determine how many Locations under contract with any Defendant Tesoro may wish to terminate in the future or the value of such terminations and transfers to Tesoro or Western from which to glean an amount in controversy.

Plaintiffs also assert claims under the Declaratory Judgment Act, which states, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration . . . ." 28 U.S.C. § 2201(a). The district court possesses "broad discretion to grant (or decline to grant) declaratory judgment." *Wilton v. Seven Falls Co*., 515 U.S. 277, 281 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to consideration of practicality and wise judicial administration." *Id*. at 288. When faced with a declaratory judgment action, a federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).[10]

The first question looks to whether there is an actual controversy among the parties. Under the Declaratory Judgment Act, declaratory relief is appropriate where there is a

---

[9] Specific performance is an equitable remedy, and the Fifth Circuit focuses on the plaintiff's viewpoint to determine the amount in controversy in cases seeking equitable relief. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 153 (5th Cir. 2003); *Garcia v. Koch Oil. Co. of Tex., Inc.*, 351 F.3d 636, 640 n.4 (5th Cir. 2003).

[10] The Court notes that Plaintiffs have not addressed the relevant factors that the Court will consider at the third step in deciding whether to exercise its discretion to consider the claims for declaratory relief. Those factors are set forth in *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003).

substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). While Plaintiffs' breach of contract claim seeks damages for past breaches as well as specific performance, a Declaratory Judgment Act judgment may be granted to clarify an existing dispute that implicates future conduct and damages, despite the existence of another adequate remedy. FED. R. CIV. P. 57. In addition, "[a] justiciable controversy is presented when a plaintiff, wishing to embark on a course of conduct, seeks to prevent another from interfering with it." *Tech. Tape Corp. v. Minnesota Mining & Mfg. Co.*, 200 F.2d 876 (2d Cir. 1952).

Plaintiffs note that there is a controversy about whether Tesoro may terminate Locations, with Tesoro asserting that it may terminate them without cause or for any reason or no reason at all, and any alleged oral representations do not undermine that contractual right under the terms of the contract, while Defendants assert that Tesoro may not terminate any more Locations in light of alleged oral representations made by Tesoro personnel. Plaintiffs request a declaration concerning Tesoro's right to terminate and Defendants' requirement to comply with their contractual obligations to transfer Locations subject to the Group 3 notices and any future termination notices. Plaintiffs have alleged a justiciable controversy with regard to Tesoro's right to terminate Locations under the contracts. [11]

---

[11] Defendants contend that Western is not a "real party in interest" to the contract claim because it is not a party to the contract, and thus Western's breach-of-contract claims should be dismissed under Rule 12(b)(6) for failure to state a claim. Docket no. 22 at 1. Defendants argue that Western "is not entitled to a declaratory judgment concerning the legal rights, duties or obligations of the parties to those Agreements." *Id.* at 6. In response, Plaintiffs assert that Western is an assignee of Tesoro's rights to Defendants' compliance with the contractual transfer obligations and is also a necessary party. Defendants' reliance on Rule 17 appears to the Court to be misplaced. It is undisputed that Tesoro is a real party in interest, and Defendants challenge only whether Western may also sue on the contract. But whether Western is a proper party to assert a breach of contract claim against any of the Defendants is a merits issue, since one of the elements of the breach of contract claim is that the plaintiff is a proper party to bring suit as either (1) a party to the contract, (2) an assignee of parties to the contract, (3) an agent entitled to sue on behalf of parties to the contract, or (4) an intended third-party beneficiary

The second question looks to whether the court has authority to grant declaratory relief. A Declaratory Judgment claim may support federal jurisdiction in diversity so long as the requirements for diversity jurisdiction are met, even if the claim does not seek a declaration of liability or award of monetary damages. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003) (noting that district court had authority to decide declaratory judgment suit where diversity jurisdiction was present and the Anti-Injunction Act did not apply because there was no pending state court action between the plaintiff and any of the declaratory judgment defendants). For diversity purposes, the amount in controversy is "the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983).[12]

Defendants contend that "Tesoro's declaratory relief claim, as pled, is not measurable by monetary damages, because they only ask that the judge declare 'the rights and obligations of the parties under the MSOs" and do not "seek a determination of liability." Docket no. 22 at 4, 7-8. The Declaratory Judgment Act "allow[s] prospective defendants to sue to establish

---

of the contract. Defendants appear to recognize that this is a merits issue, or at least an intertwined merits/jurisdiction issue, by bringing this as a 12(b)(6) motion. The Court cannot decide merits issues under Rule 12(b)(6) before deciding its jurisdiction.

    In addition, with regard to the declaratory judgment claim, such claims generally include as parties all those interested in or affected by a contract. *E.g.*, Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 37.004(a) ("A person interested under a . . . written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."); 28 U.S.C. § 2201(a) (noting that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought"). Texas law expressly requires that "all persons who have or claim any interest that would be affected by the declaration must be made parties." Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 37.006(a). Under federal law, failure to include necessary parties weighs against the exercise of jurisdiction in a declaratory judgment action. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 391 (5th Cir. 2003). Defendants have not shown that non-parties to a contract who are affected thereby are not proper or necessary parties to a declaratory judgment claim, even if they are not proper parties in the breach of contract claim.

[12] As noted, Plaintiffs generally alleged that this amount exceeds $75,000, but this amount cannot be credited given the existence of multiple parties and no asserted bases for aggregation.

their nonliability." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).[13] None of the specific relief requested in the Complaint seeks a declaration of non-liability, perhaps because Western is also a party on the claim, and any potential non-liability would apply only to Tesoro.

The object of the litigation from Tesoro's point of view is to have its right to terminate Locations declared without interference or objection or a claim for damages by Defendants. However, Tesoro has not provided any pleading or evidence from which the value of this declaratory relief may be determined with regard to any particular claim against any of the three Defendants, nor has it provided any basis for aggregation of its claims.[14] Similarly, Plaintiffs provide no articulation of the object of the litigation to Western or its potential value to Western as to any particular Defendant. Further, the Complaint refers only to a demand by Defendants that Tesoro pay $130 million before Defendants would confirm that they would comply with their contractual obligations to transfer of Locations, which does not necessarily reflect Tesoro's potential liability with regard to any particular Defendant (and appears to encompass the claims of additional entities).[15]

---

[13] A plaintiff need not always expressly seek a declaration of nonliability to make potential liability a possible measure of the amount in controversy, *See Needbasedapps, LLC v. Robbins*, 926 F. Supp. 2d 919 (W.D. Tex. 2013) (construing request for declaration that plaintiff's conduct was lawful as seeking to determine its potential liability).

[14] Plaintiffs allege that they were contacted by an attorney for Defendants with a draft complaint including claims related to the terminations, and that a later email from counsel alleged that Defendants had suffered damages in excess of $65 million as a result of the first three Group terminations, and anticipated losing another $65 million if Tesoro terminated additional locations. *Id.* ¶¶ 43-49. However, those damages do not appear to be limited to the three Defendants in or the terminations in this lawsuit.

[15] As noted, Defendants along with two additional other entities (all appearing to be commonly owned/managed by Rene Anabi) did sue Andeavor, Tesoro's parent company, in California state court on August 10, 2018, the day after this lawsuit was filed here. The state court petition alleged that "all in all", those five parties had been damaged in the amount of $130 million by the conduct of Tesoro and another entity. Thus, it does not shed light on how much potential liability Tesoro may have as to CAR, TMSO, or NMSO individually. Tesoro removed the

Thus, at this point in time, the Court is unable to conclude that the claims of any Plaintiff against any Defendant satisfy the amount in controversy requirement, and Plaintiffs have failed to establish a basis for this Court to exercise jurisdiction over any of the claims. They also fail to address whether this Court should exercise its discretionary jurisdiction over the Declaratory Judgment Act claim. These issues must be briefed more fully before the Court can rule on Defendants' 12(b)(1) motion.

## Venue

Even if this Court ultimately finds that it has subject matter jurisdiction, venue may not lie here. Or, the Court may decide to proceed with determining venue before resolving the jurisdictional issue. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435-36 (2007) (there is no mandatory sequence for resolving non-merits issues, and thus venue may be addressed before subject matter jurisdiction in appropriate circumstances); *McCormick v. Payne*, No. 3:15-CV-02729-M, 2015 WL 7424772, at *2 (N.D. Tex. Nov. 23, 2015) (citing *Sinochem* for the proposition that a court may transfer a case before a determination of subject matter jurisdiction); *Curtis v. BP Am., Inc*., 808 F. Supp. 2d 976, 983 (S.D. Tex. 2011) (noting, "while the absence of subject matter jurisdiction prevents a court from reaching a case's merits, a court may transfer a case without first determining whether it has subject matter jurisdiction over the case") (citing *In re LimitNone, LLC*, 551 F.3d 572, 577-78 (7th Cir. 2008)). Jurisdiction is vital only if the Court proposes to issue a judgment on the merits. *Sinochem*, 549 U.S. at 431.

---

case to the Central District of California, where it remains pending. 2:18-CV-7989-GW-JPR. The California district court has not addressed the issue of diversity jurisdiction (either amount in controversy or the allegations of improper joinder).

Defendants move to dismiss this case for improper venue under Rule 12(b)(3) or, alternatively, to transfer it to California pursuant to 28 U.S.C. § 1406. These requests are premised on two arguments: (1) venue is improper here because the contracts set mandatory venue of the claims in California, and (2) venue is improper here because "a substantial part of the events of omissions giving rise to the claim" did not occur in this district. Docket no. 24 at 1-2.[16] Plaintiffs correctly point out that the Supreme Court clarified in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013) that motions to enforce mandatory forum selection clauses setting venue in another federal forum are properly brought under 28 U.S.C. § 1404(a), because Rule 12(b)(3) and § 1406 both presuppose that venue in the chosen forum is wrong, while a §1404(a) motion "does not condition transfer on the initial forum's being wrong." *Atl. Marine*, 571 U.S. at 59. However, Defendants here do assert that venue in this district is wrong, separate and apart from the forum selection clause, arguing that all events and omissions giving rise to the claim occurred in California. In any event, Defendants also move for transfer in the alternative under § 1404(a). Thus, regardless of whether venue in this district is right or wrong, the Court may consider the motion to transfer under § 1404(a).

The parties agree that venue in this district would be governed by 28 U.S.C. § 1391(b)(2), so-called transactional venue, which provides that a civil action may be brought in: a judicial district in which a substantial part of the events or omissions giving rise to the

---

[16] Plaintiffs assert, incorrectly, that Defendants' motion "relies solely on the forum-selection clause's permissive consent to jurisdiction for possession-related claims as grounds for dismissal or transfer." Docket no. 27 at 6. But that is not accurate. Defendants argue that venue is improper here because none of the events giving rise to Plaintiffs' claims occurred here, and also rely on § 1404(a) as a basis for transfer. They note that the Locations at issue are all in California; the MSO Agreements were and are to be performed in California; the alleged conduct and statements by Defendants that Plaintiffs claim amounted to breach or anticipatory breach all occurred in California; the contracts were signed in California; litigating this case here is burdensome to Defendants; and other than Plaintiffs being headquartered here, Texas has no interest in the dispute. Docket no. 24 at 5.

claim occurred, or a substantial part of property that is the subject of the action is situated. Transactional venue must be proper for each party; the fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else. 14D Wright & Miller, Fed. Prac. & Proc. § 3807. If the case falls within § 1391(b)(2), venue is proper, though a party may enforce a valid mandatory forum selection clause setting venue in another federal forum through the modified § 1404(a) analysis set forth in *Atlantic Marine*.[17] If the case does not fall within § 1391(b)(2), venue is improper, and the Court may dismiss under Rule 12(b)(3) or transfer under § 1406, unless Defendants have waived objections to improper venue by agreeing to venue in this district in the forum selection clause.

Thus, there are several operative issues that control the analysis: whether transactional venue supports venue in this district, whether Defendants waived any argument that venue is improper here by agreeing to venue here, whether the forum selection clause sets mandatory venue or permissive venue here or in another federal district, and whether transfer under § 1404(a) is appropriate.

---

[17] A mandatory forum selection clause affirmatively requires that litigation arising from the contract be carried out in a given forum. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). By contrast, a permissive clause is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. *Id.* The modified § 1404(a) analysis set forth in *Atlantic Marine* applies only when a mandatory forum selection clause sets venue in another federal forum. *See Waste Mgmt. of La., LLC v. Jefferson Parish*, 594 F. App'x 820 (5th Cir. 2014); *Fin. Cas. & Surety, Inc. v. Parker*, No. H-14-0360, 2014 WL 2515136 (S.D. Tex. June 4, 2014) (listed cases so holding); *see also BAE Sys. Tech. Soln. & Servs., Inc. v. Republic of Korea's Defense Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018) ("Although the *Atlantic Marine* Court did not expressly hold that only a mandatory forum selection clause modifies the *forum non conveniens* framework, the Court's rationale makes clear that this is so.")(and citing cases).

The Court first notes that Plaintiffs have not clearly established transactional venue for their claims.[18] Venue in contract actions is proper where the contract at issue was entered into and to be performed. *Atl. Marine*, 571 U.S. at 54 n.1. But here it appears undisputed that the three contracts were to be performed in California. Defendants' evidence indicates that 2017 and 2018 C.A.R. MSOs, the 2017 and 2018 NMSO MSOs, and the 2018 TMSO MSO were "entered into and signed in California." Anabi Affidavit at ¶¶ 2, 4, 6. Yoder's declaration on behalf of Plaintiffs states that "Tesoro entered into [the contracts] with Defendants at its principal place of business in San Antonio," which appears to mean that Tesoro signed the contracts in San Antonio.[19] Thus, each party appears to have signed the contracts in their locations, though neither party provides further elaboration on where contract negotiations took place.

Yoder asserts that "[t]hroughout the course of performance of the MSO Agreements, Defendants communicated with Tesoro in San Antonio by telephone and email and, in at least one instance, by travelling personally to San Antonio, Texas to meet with Tesoro at its principal place of business." But he does not specify what activity occurred under the expired contracts (the April 1, 2017 contracts) or the contracts at issue here, which were entered March

---

[18] There is a split of authority among federal courts and in the Fifth Circuit concerning which party shoulders the burden of establishing venue on a Rule 12(b)(3) motion, but it appears the majority place the burden with the plaintiff. *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 473 n.2 (W.D. Tex. 2016).

[19] Once again Plaintiffs lump themselves and Defendants together, despite the fact that Western is not a signatory to the contract and that each party must establish venue for its claims. Defendants point out that Yoder is Senior Vice President for Western Refining Southwest, Inc., an entity that is not a party to this action and not a party to the underlying MSO Agreements, and is not an employee, agent, or representative of either Plaintiff. Defendants also point out that Yoder's affidavit fails to demonstrate how he possesses personal knowledge of the statements, such as by being involved in the negotiations of the MSO Agreements (which Defendants say he was not), that he was involved in executing the Agreements (which Defendants say he was not), or that he was even present when they were executed (which Defendants say he was not). Docket no. 34 at 5. Thus, Plaintiffs' evidence is weak at best.

1, 2018, nor have Plaintiffs provided any basis for concluding that Defendants' activities related to or under the expired contracts somehow constitute a "substantial part of the events" giving rise to the current claims under the current contracts. In contrast, Anabi's Affidavit on behalf of Defendants states that after Tesoro informed Defendants in August 2017 that it intended to terminate some Locations, all communications Defendants' attorneys and Anabi (and any other representative of Defendants) took place in California, and none took place in Texas. Anabi Affidavit ¶ 8.

Yoder further attests that corporate decisionmaking regarding the course of performance of the Agreements, including the authorization to notice termination and transfer the locations at issue in this action, occurred at Plaintiffs' principal place of business in San Antonio and that "Plaintiffs were injured in San Antonio . . . including – as a result of their inability to sell liquor due to Defendants' failure to transfer necessary business permits – difficult to quantify loss of customers and revenue and harm to reputation and goodwill." But the inability to sell liquor (which appears to be a venue fact applicable only to Western) unquestionably occurred in California, not San Antonio, and at most it appears that the economic harm was felt in San Antonio. Focusing on the place of economic harm would mean that venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished by eliminating the language that stated that the district in which the claim arose was the proper venue. *ENTU Auto Services, Inc. v. PicMyRide.Biz, LLC*, No. 15-77, 2015 WL 1638179, *4 (E.D. La. Apr. 13, 2015) (citing 14D Wright & Miller, FED. PRAC. & PROC. § 3806 (4th ed. 2014)). Thus, "[t]here is a tendency to conclude that suffering

economic harm within a district is not by itself sufficient to warrant transactional venue there." Wright & Miller, Fed. Prac. & Proc. § 3806.

Moreover, the Fifth Circuit has not decided whether the assessment of transactional venue under 28 U.S.C.A. § 1391(b)(2) should consider plaintiffs' activities, or only defendants', and many district courts in the Fifth Circuit have held that the focus is on the actions or omissions of defendants. *ENTU*, 2015 WL 1638179, at *4. Considering the actions or omissions of defendants in this case, venue would lie in California, but not Texas. Even if we consider the actions or omissions of both plaintiffs and defendants, it does not appear that a *substantial* part of the events giving rise to the claims occurred here, especially with regard to Western's claims. Thus, the Court is inclined to find that venue is not proper in this district, though more specific evidence and briefing would be required for the Court to reach a final conclusion. If venue is improper, the Court must consider whether Defendants waived any objection to improper venue in this district by agreeing to venue here in the relevant contracts. Even if venue is proper, the Court must consider the effect of the forum selection clause in the contracts on the § 1404(a) motion. The Court thus turns to the forum selection clause.

The parties agree that each of the three contracts at issue contains the same choice of law provision and forum selection clause, as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to conflict of laws principles. Each party consents to the exclusive jurisdiction of any court of competent jurisdiction located in San Antonio, Texas. Notwithstanding the foregoing, any claims relating to possession of a Location shall be governed by and construed in accordance with the law in [the state in] which the Location is located and with respect to such claims each party consents to the jurisdiction of any court of competent jurisdiction in the state in which the Location is located.

One difficulty arises from the fact that the second venue clause appears to be permissive, while the first clause is mandatory. Because of this, Plaintiffs contend that the forum selection clause sets mandatory venue for all actions in San Antonio, except that it *also* sets permissive venue for "any claims relating to possession of a Location" in the state in which the Location is located. Thus, they contend, any type of claim may be litigated in San Antonio under the venue clause. Plaintiffs further assert, however, that this action does not involve "claims relating to possession of a Location" and thus only the first part of the clause applies, and it mandates venue in San Antonio. Plaintiffs contend that only a suit attempting to evict Defendants from the Locations would fall under the second part of the clause. Defendants, in contrast, assert that Plaintiff's claims do relate to possession of a Location, and that they must therefore be brought in California.

There are two possible readings of the venue clause. First, as Plaintiffs argue, venue is always proper in San Antonio, but claims relating to possession of a Location may also be brought in the Location's state (here, California). Second, as Defendants argue, venue is proper in San Antonio unless the claim relates to possession of a Location, in which case the agreement for venue in San Antonio disappears and the parties agree that the claims may be brought in the State's Location. Thus, when claims relate to possession, venue is agreed to be proper either (1) in both San Antonio and the Location's state (California) or (2) in the Location's state (California).[20]

---

[20] If the first is true, then Defendants waived any Rule 12(b)(3) objection to this District as an improper venue. But it would not appear that they have waived the right to argue that the Location district, which is also agreed to, is more convenient under § 1404(a), as a § 1404(a) transfer motion does not necessarily assert that venue here is improper; it only argues that venue in California is also proper, and is a more convenient forum. Plaintiffs themselves acknowledge that the fact that a party consents to jurisdiction in one forum does not waive its right to have the action heard in another. Docket no. 27 at 4 (citing cases); *see also Link America, LLC v. Infovista Corp.*,

In support of their position that venue is proper in both San Antonio and California, Plaintiffs cite cases including venue clauses that include "notwithstanding the foregoing" language, but those cases are easily distinguishable because they contain clauses addressing different parties. In those cases, for example, the plaintiff agrees to mandatory exclusive jurisdiction in a particular location, but notwithstanding the foregoing, the plaintiff agrees that the *defendant* may enforce the agreement in a different location. Clearly, the fact that *one party* has permission to avoid the mandatory exclusive venue clause does not negate the mandatory exclusive venue clause, and both clauses must be given effect despite the "notwithstanding" language. Both clauses can be true at the same time.

But in this case, both parties consent to the first clause and both parties consent to the second clause, and both clauses apply equally to both parties. If venue is permissible in California, it cannot also be mandatory in San Antonio. Thus, the second clause and its "notwithstanding" language necessarily negates the mandatory nature of the first clause at the very least, and arguably negates the entire first clause because the second clause supplants *both* the choice of law and the venue provisions. If the second clause sets California law, not both Texas and California law, then it arguably sets California venue, not both Texas and California venue. In other words, if only the second choice-of-law provision applies to possession claims, then logically, only the second venue provision applies. Regardless, if the claim is related to possession, there is clearly no mandatory venue provision in play.

Thus, the key question becomes whether the claims asserted are "any claims relating to possession of a Location." *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th

No. 3:16-CV-542-M, 2016 WL 3406114, at * 1 (N.D. Tex. June 21, 2016) ("merely consenting to jurisdiction in one forum does not operate to waive the right to have an action heard in another forum").

Cir.1998) (courts look to the language of the parties' contract to determine which causes of action are governed by the forum selection clause). "Relating to" is broad, meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97-98 & n.16 (1983) (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *Mendoza v. Microsoft, Inc.*, 1 F. Supp. 3d 533, 548 (W.D. Tex. 2014) ("the term 'related to' is typically defined more broadly while not being necessarily tied to the concept of a causal connection"). Defendants argue that all the claims, including claims concerning transfer of permits for operating Locations and participation in "transition plans" regarding the transfer of Locations, at bottom relate to transfer of possession of Locations.

The Court is not convinced by Plaintiffs' assertion that their claims are not claims "relating to" possession of a Location simply because Tesoro is not attempting to evict any of the Defendants from any particular locations. If eviction was all that was intended to be included by that clause, it would presumably have been more narrowly worded. Transfer of locations and operation of locations appears to "relate to possession" of Locations. No party has provided the entire contract at issue or indicated that it might shed light on the meaning of the venue clause, but a plain reading of the clause would seem to encompass the current claims (both the breach of contract claim and the declaratory judgment claim) within the venue provision for claims "relating to possession of a Location."

Thus, at this time, the Court is inclined to find that the claims "relate to possession of a Location" and that the forum selection clause sets permissive venue in California, and does not set venue in San Antonio. At the very least, it sets permissive venue in both San Antonio and

California, and the *Atlantic Marine* analysis does not apply. Accordingly, the Court can consider the motion to transfer venue under § 1404(a). However, because Defendants assert that the forum selection clause setting venue in California for claims relating to possession is mandatory rather than permissive, they have not briefed the appropriate § 1404(a) analysis. The modified § 1404(a) analysis in *Atlantic Marine* only applies when the forum selection clause sets mandatory venue in another federal forum. Where, as here, the forum selection clause sets permissive venue in another federal forum, the traditional § 1404(a) analysis applies. *Link America, LLC v. Infovista Corp.*, No. 3:16-CV-542-M, 2016 WL 3406114, at * 1 (N.D. Tex. June 21, 2016) ("If a court concludes that a forum-selection clause is permissive, it must engage in a traditional § 1404(a) analysis and "evaluate both the convenience of the parties and various public-interest considerations.")

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The preliminary question under §1404(a) is whether the action might have been brought in the destination venue or whether the parties consented to venue there. It appears undisputed that this action might have been brought in the Central District of California, because venue would be proper there under § 1391(b)(1) or (b)(2). Further, if the claims concern possession of a Location, the parties consented to jurisdiction in California. However, before the Court can decide whether transfer under § 1404(a) is appropriate, it must reach a final conclusion concerning whether the claims are "related to possession of a

Location" and the parties must submit appropriate briefing on the private and public interest factors relevant to a § 1404(a) transfer analysis.

## 12(b)(6) Motion

The Court must reserve ruling on the 12(b)(6) motion until it determines the issues of subject matter jurisdiction and venue.

## Conclusion

Although statements such as "the amount in controversy must exceed $75,000" and venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred," application of these rules can be complex where multiple parties and claims are involved. The Court has made a preliminary review of the motions and the issues raised. The motion to strike (docket no. 23) is DENIED. The parties are to be prepared to discuss the remaining motions and the matters discussed herein, including whether any additional evidence or jurisdiction or venue-related discovery is needed to resolve the motions, and an appropriate schedule for further briefing of these issues, at the upcoming status conference. Due to scheduling issues, the status conference is RE-SET from December 5, 2018 to 2:00 pm on December 11, 2018.

SIGNED this 19th day of November, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE